UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES PLATTE, JR.,
#285651,

      Petitioner,                               Civil Action No. 19-CV-11167

vs.                                        HON. BERNARD A. FRIEDMAN

SARAH SCHROEDER,[1]

      Respondent.
_____/

## OPINION AND ORDER DENYING PETITIONER'S APPLICATION FOR A WRIT OF HABEAS CORPUS, GRANTING A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS

Petitioner, an inmate at the Alger Correctional Facility in Munising, Michigan,[2] has

filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  In his pro se

application, petitioner challenges his jury trial convictions for assault with intent to murder

("AWIM"), MICH. COMP. LAWS § 750.83; failure to stop at the scene of an accident resulting in

serious impairment or death, MICH. COMP. LAWS § 257.617(2); and aggravated domestic assault,

MICH. COMP. LAWS § 750.81a(2).  The petition raises three claims for relief – two pertaining to

the denial of petitioner's Sixth Amendment right to self-representation, and a related claim of

ineffective assistance of appellate counsel.  For the following reasons, the Court shall deny the

---

[1]   The caption is amended to reflect the proper respondent in this case, the warden of the prison where petitioner is currently incarcerated.  *See Edwards v. Johns*, 450 F. Supp. 2d 755, 757 (E.D. Mich. 2006); Rules Governing § 2254 Case, Rule 2(a), 28 U.S.C. foll. § 2254.

[2]   Although Alger Correctional Facility is located within the Western District of Michigan, the state court that convicted and sentenced petitioner is located within the Eastern District of Michigan.  Therefore, pursuant to 28 U.S.C. § 2241(d), both districts "have concurrent jurisdiction to entertain [petitioner's] application" for a writ of habeas corpus.

petition.  However, the Court shall grant petitioner a certificate of appealability and leave to appeal

in forma pauperis as to his second and third claims for habeas relief.

## I.   *Background*

As summarized by the Michigan Court of Appeals, petitioner's case arose "from a

traffic accident involving [petitioner] and his girlfriend, Dianna, in Gaylord, Michigan on the night

of August 27, 2006." *People v. Platte*, No. 307858, 2014 WL 2039996, at *1 (Mich. Ct. App. May

15, 2014).  Dianna was driving with petitioner in her Jeep Grand Cherokee when he forced her to

stop.  *See id.*  Petitioner yanked Dianna out of the Jeep, forced her into the passenger side of the

vehicle, and struck her in the head multiple times.  *See id*.  He then drove the Jeep into a tree,

driving at a speed of thirty-five to forty-five miles per hour.  *See id* at *1-2.  Witnesses reported

that after the collision, petitioner told Dianna "[w]e should have died together."  *Id*. at *1.

Petitioner informed police that Dianna was driving, but multiple witnesses stated that they had

observed him in the driver's seat.  *See id.* at *1-2.  Further, DNA analysis matched petitioner's

blood samples with several samples taken from the driver's side of the Jeep and matched Dianna's

blood samples with those taken from the passenger's side.  *See id.* at *2.

The court of appeals summarized petitioner's charges and court proceedings as

follows:

> Defendant was charged with AWIM, failure to stop at the scene of
> an accident resulting in serious impairment or death, and aggravated
> domestic assault.  His first trial resulted in a hung jury.  Defendant
> represented himself during a portion of the first trial and the trial
> court held defendant in contempt of court several times—for "giving
> the finger to the Prosecutor" and telling defense counsel William
> Slough "to get the F away from [defendant]."  He was subsequently
> sentenced to 93 days in jail for those offenses.  Before the second
> trial, defendant again attempted to waive his right to counsel, but the
> trial court denied defendant's request to represent himself based on
> his prior "hostile and aggressive" behavior.  Defendant thereafter
> waived his right to be present at trial.

> At the second trial, the prosecutor and defendant called experts who provided conflicting opinions regarding who was driving the Jeep at the time of the crash.  The jury convicted defendant as charged.

*Id*.  Petitioner was sentenced "as a fourth habitual offender to 30 to 50 years in prison for the AWIM conviction, 30 to 50 years in prison for the failure to stop conviction, and 2 to 15 years in prison for the aggravated domestic assault conviction."  *Id*. at *1.

On direct appeal, petitioner raised five issues:  (1) his due process rights were violated by permitting the complainant to be referred to as a "victim"; (2) he was denied a fair trial by the admission of "other bad acts" evidence pursuant to Michigan Rule of Evidence 404(b); (3) his constitutional rights to self-representation and effective assistance of counsel were violated; (4) trial counsel was ineffective for failing to challenge a biased juror for cause; and (5) he was entitled to resentencing because three offense variables under Michigan's sentencing guidelines were erroneously scored.  (ECF No. 8-26, PageID.2761-62).  The court of appeals affirmed petitioner's convictions and sentence.  *Platte*, 2014 WL 2039996, at *1.  The Michigan Supreme Court denied leave to appeal in a standard form order, *People v. Platte*, 497 Mich. 952 (2015), and the United States Supreme Court denied certiorari.  *Platte v. Michigan*, 577 U.S. 855 (2015).

Petitioner then filed a motion for relief from judgment in the state trial court raising five additional issues:  (1) his right to a speedy trial under Michigan law was violated; (2) he was denied a fair trial when the prosecutor referred to his privileged medical records; (3) trial counsel was ineffective when he failed to object to the medical evidence; (4) "[t]he trial court repeatedly violated [petitioner's] right of self-representation"; and (5) appellate counsel was constitutionally ineffective for failing to raise the first four issues on direct appeal.  (ECF No. 8-25, PageID.2584-85).  The trial court denied the motion.  It held that the first four issues could have been raised on direct appeal and, regardless, all lacked merit.  (ECF No. 8-28, PageID.3083-86).  The trial court

3

further ruled that appellate counsel was not ineffective for failing to raise meritless issues on appeal.  (*Id*., PageID.3086).

Petitioner proceeded to file a timely application for a writ of habeas corpus, raising eight claims for relief.  (ECF No. 1).  On December 6, 2019, the Court granted petitioner's motion to amend his petition, in which he reduced his claims to following three grounds for relief:

> **GROUND ONE**: THE TRIAL COURT'S SEPTEMBER 15, 2011, DENIAL OF SELF-REPRESENTATION VIOLATED PETITIONER'S RIGHTS UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.
>
> **GROUND TWO**:  THE TRIAL COURT REPEATEDLY VIOLATED PETITIONER'S SIXTH AND FOURTEENTH AMENDMENT RIGHTS TO SELF REPRESENTATION.
>
> **GROUND THREE**:  PETITIONER WAS DENIED HIS FOURTEENTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL WHERE APPELLATE COUNSEL FAILED TO RAISE THE ISSUES PRESENTED IN GROUND TWO OF THIS PETITION IN THE PETITIONER'S APPEAL OF RIGHT.

(ECF No. 10, PageID.3228-35).  Respondent filed response briefs to both the original and amended petitions, arguing that petitioner's claims lack merit.  (ECF Nos. 7, 12).

## II.    *Legal Standard*

As the Supreme Court has stated:

> The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) requires a prisoner who challenges (in a federal habeas court) a matter "adjudicated on the merits in State court" to show that the relevant state-court "decision" (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

*Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018) (quoting § 2254(d)).  A decision of a state court is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or if the state court "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that reached by the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (O'Connor, J., concurring).  An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case."  *Id*. at 409.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  *Id*. at 411.

 "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision."  *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation marks omitted).  The focus of this standard "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable–a substantially higher threshold."  *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).  "AEDPA thus imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt."  *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks and citations omitted).  In addition, factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary.  *See* § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  The federal habeas court's review is "limited to the record that was before the state court."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

 "[D]etermining whether a state court's decision resulted from an unreasonable legal

or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Harrington*, 562 U.S. at 98. When the state courts' decisions provide no rationale, the burden remains on the habeas petitioner to demonstrate "there was no reasonable basis for the state court to deny relief." *Id*. However, when a state court has explained its reasoning, that is, "[w]here there has been one reasoned state judgment rejecting a federal claim," federal courts should presume that "later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Wilson*, 138 S. Ct. at 1194. Accordingly, when the last state court to rule provides no basis for its ruling, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale." *Id*. The "look through" rule applies regardless of whether the last reasoned state court opinion based its ruling on procedural default or ruled on the merits. *See id*. at 1194-95.

However, AEDPA deference does not apply to claims that were not "adjudicated on the merits in State court proceedings." *Robinson v. Howes*, 663 F.3d 819, 822-23 (6th Cir. 2011). Instead, such cases "receive the pre-AEDPA standard of review:  de novo for questions of law (including mixed questions of law and fact), and clear error for questions of fact." *Id*. at 823.

## III.  Discussion

### A.  Grounds One and Two:  The Sixth Amendment Right to Self-Representation

#### 1.  Standards of Review

Petitioner claims that his Sixth and Fourteenth Amendment rights to self-representation were violated first by the trial court's September 15, 2011, denial of his request to conduct his own defense following a hearing on the issue; and second, by its failure to rule on his repeated, unequivocal requests that he be permitted to do so over the nine-month period preceding the September 2011 hearing.  (ECF No. 10, PageID.3228-34).  As explained in further detail

below, petitioner's second claim of error is not subject to AEDPA deference and must be reviewed de novo.

Both the Michigan Court of Appeals and Michigan Supreme Court denied petitioner leave to appeal the trial court's denial of his motion for relief from judgment in standard form orders, that is, without explaining the basis for these rulings. Therefore, the Court must "look through" the state appellate court's unexplained decisions "to the last related state-court decision that does provide a relevant rationale." *Wilson*, 138 S. Ct. at 1192.

However, the trial court's decision regarding petitioner's claim of repeated violations of his Sixth Amendment right to self-representation does not provide such a "relevant rationale." The court relied exclusively on its September 15, 2011, *Faretta*[3] hearing order to reject petitioner's Sixth Amendment claims, even though petitioner's motion challenged more than the trial court's September 2011 ruling. Rather, petitioner clearly claimed that his right to self-representation was violated over the several months of court proceedings prior to that ruling, during which time the court failed to rule on his three unequivocal requests to represent himself. Petitioner made these requests on December 7, 2010 (ECF No. 8-6, PageID.297-99; 303-04), January 4, 2011 (ECF No. 8-7, PageID.470), and September 7, 2011 (ECF No. 8-13, PageID.829).[4]

Petitioner further distinguished these two issues in his ineffective assistance of appellate counsel claim, which he included in his motion for relief from judgment. In that motion,

---

[3] A hearing or colloquy compliant with *Faretta v. California*, 422 U.S. 806 (1975), ascertains whether a criminal defendant's request to waive counsel is unequivocal and is made knowingly, intelligently, and voluntarily. *See United States v. Powell*, 847 F.3d 760, 774 (6th Cir. 2017).

[4] The Court notes that although the trial court declined to address petitioner's request for self-representation during the September 7, 2011, hearing, it did rule on the request just eight days thereafter on September 15, 2011.

7

he argued that appellate counsel was ineffective for raising the *Faretta* hearing decision but omitting the self-representation claim that was based on his various ignored requests.  (ECF No. 8-25, PageID.2621-23, 2632-33).  "When the evidence leads very clearly to the conclusion that a federal claim was inadvertently overlooked in state court, § 2254(d) entitles the prisoner to an unencumbered opportunity to make his case before a federal judge."  *Johnson v. Williams*, 568 U.S. 289, 303 (2013).  Because the trial court clearly failed to recognize or address petitioner's second self-representation claim, it was not "adjudicated on the merits" for AEDPA purposes.  Accordingly, it must be "reviewed *de novo* as it would be on direct appeal."  *Stermer*, 959 F.3d at 721.  In contrast, petitioner's first self-representation claim was addressed and deemed meritless by the state trial court and is therefore subject to AEDPA's highly deferential standard of review.

### 2.  *Background and Procedural History*

Petitioner sought to conduct his own defense at his second trial, after his first trial ended in a mistrial caused by a deadlocked jury.[5]  In his amended petition for a writ of habeas corpus, petitioner argues that the trial court violated his Sixth Amendment rights when it denied his request for self-representation following a *Faretta* hearing (Ground One); and when it "fail[ed] to rule on and[/]or conduct the required hearing in any regard upon Petitioner's clear requests to waive counsel and proceed pro se." (Ground Two).  (ECF No. 10, PageID.3228-34).  In support of his second claim, petitioner asserts that he repeatedly moved for self-representation between December 2010 and September 2011, but that the trial court neither conducted a *Faretta* hearing

---

[5]   In his reply brief, petitioner appears to argue that he was denied his right to self-representation in his first trial by being forced to continue with unwanted counsel.  (ECF No. 13, PageID.3286).  The Court will not address this argument.  Section 2254 applies only to collateral attacks on the judgment of a state court that placed the petitioner in custody.  Because the first trial ended in a mistrial, petitioner is not in custody pursuant to a judgement from that proceeding.  There is, therefore, no judgment from the first trial that he can collaterally attack.  *See McGuire v. Blubaum*, 376 F. Supp. 284, 285 (D. Ariz. 1974).

nor ruled on these requests.  (*Id*., PageID.3233-34).  Instead, the trial court required him to proceed with appointed counsel.

Petitioner's allegations that the trial court repeatedly failed to act on his request to represent himself are borne out by the record.  At a motion hearing on December 7, 2010, the following exchange occurred between petitioner and the trial court:

> THE COURT:  You now want to represent yourself again, Mr. Platte?
>
> THE DEFENDANT:  Yes, your Honor.
>
> THE COURT:  Well, we've been down that road and --
>
> THE DEFENDANT:  Well, that was a different road and this is -- this here --
>
> THE COURT:  I permitted it and at -- then I had to rescind that.
>
> THE DEFENDANT:  That's because my waiver at that point was unequivocal, and at this time it's -- or my waiver was equivocal and at this time it's [an] unequivocal waiver.  I -- I wish to notify the Court at this time of my intentions to -- to proceed in pro per, I guess, or to exercise my right to self-representation.
>
> THE COURT:  Well, I'm not prepared to deal with it today.  I don't have all the materials that I need to go through.  I don't -- want to make sure that's it an equivocal waiver --
>
> THE DEFENDANT:  I see.
>
> THE COURT:  -- and that I properly do it with you.
>
> THE DEFENDANT:  What would be the best time for -- for this matter to be raised, your Honor?  I just don't want it to be on the eve of trial and then we have to go through -- you know, have another reason or another discussion about this being not untimely [sic].
>
> * * *
>
> THE COURT:  -- you must know by now that I don't do things on the fly.  I like to do them in a researched, deliberative manner.  So I'm not prepared to make a -- . . . proper record today.
>
> * * *

> THE COURT:  I -- I want to be able -- . . . to research it, so file a brief petition telling me why you want to do it.  I'll hear it.  I can hear it in early January.

(ECF No. 8-6, PageID.297-99; 303-04).  At the time of this hearing, the second trial was scheduled for February.  (*Id.*, PageID.302).  However, at the next motion hearing, held on January 4, 2011, the trial court noted that the trial would be adjourned.  (ECF No. 8-7, PageID.464).  The court again declined to hear petitioner's motion, after the prosecutor (attorney Erin M. House) raised the issue:

> MS. HOUSE:  Your Honor, the other issue -- I don't think we've ever ruled on the defendant's motion last time we were here about representing himself.
>
> THE COURT:  And I'm not gonna get to that today.
>
> MS. HOUSE:  Okay.
>
> THE COURT:  I'd be inclined to permit him to address me and maybe file motions in addition to his attorney, but I'm not really inclined to permit full self-representation, and I don't have time to actually make a record on that today.

(*Id.*, PageID.470).  Toward the hearing's conclusion, the court mentioned petitioner's motion to represent himself along with other pending motions, stating that they "should all be re-noticed.  Presumably, I'm gonna have time in early February."  (*Id.*, PageID.494).  However, the issue of self-representation did not come up again until September 2011.  In the interim, petitioner continued to be represented by appointed counsel, although the court permitted him to advance motions and argue on his own behalf.  (ECF No. 8-10, PageID.734, 740-44; ECF No. 8-12, PageID.823).  During this period, petitioner and counsel did not always agree on questions of strategy.  For example, during a May 6, 2011, hearing, petitioner indicated that he wanted "to assert [his] speedy trial rights and to proceed with trial . . . at the most earliest [sic] and convenient time."  (ECF No. 8-11, PageID.765).  Nonetheless, in response to the government's motion for an

earlier trial date, defense counsel filed a brief in opposition.  (*Id.*, PageID.762-65).  This was contrary to petitioner's wishes, which, petitioner indicates, he had previously communicated to defense counsel.  (*Id.*, PageID.765).[6]

At a September 7, 2011, motion hearing, the trial court once again delayed acting on petitioner's request to exercise his right to self-representation:

> THE DEFENDANT:  Your Honor, can we -- can we cease these proceedings on these motions and proceed with the Motion to Withdraw Counsel at this point?
>
> THE COURT:  I'm gonna take it in the order in which I want to hear it.

(ECF No. 8-13, PageID.829).  At the end of the hearing, the court noted that it would have to reschedule "to a later time" petitioner's motion to waive counsel and represent himself. (*Id.*, PageID.851).

The trial court finally took up petitioner's motion during a *Faretta* hearing held on September 15, 2011.  The court ruled from the bench, noting that petitioner would "be disruptive to the court" because he had been "hostile and aggressive," had outbursts, and had been held in contempt twice during his first trial.  (ECF No. 8-14, PageID.872-73).  The court followed up with a written order on September 21, 2011, which cited *Faretta* and repeated the factors the court had discussed at the hearing.  (ECF No. 8-28, PageID.3074-75).  The order noted petitioner's assaultive history, concluding that permitting him to represent himself would result in "an undue burden" on

---

[6]   Petitioner further indicates that the strategy disagreements between himself and counsel continued through trial.  For example, petitioner contends that motions he successfully litigated on his own behalf – "including the assertion of physician-patient privilege and subsequent stipulation, and additional court orders . . . (i.e., the order to preclude the use of the term 'victim', for example)" – were not "honored or adhered" to by counsel.  (ECF No. 8-25, PageID.2633).

the court's safety and security interests and would likely extend the trial beyond its scheduled duration. (*Id.*, PageID.3076).

Following the September 15, 2011, *Faretta* hearing, petitioner challenged, through counsel on direct appeal, the court's order denying his request to exercise his right to self-representation. The Michigan Court of Appeals rejected petitioner's claim. In doing so, it reviewed the three requirements for waiver of counsel under Michigan law: (1) the waiver must be unequivocal; (2) it must be made "knowingly, intelligently, and voluntarily"; and (3) the defendant's self-representation must not be disruptive to the court. *Platte*, 2014 WL 2039996, at *7. The court of appeals held that, due to his previously disruptive conduct, the trial court did not err in denying petitioner's motion for self-representation:

> [B]ecause the trial court had already presided over defendant's first trial and lengthy pretrial proceedings, it had already experienced defendant's disruptiveness firsthand. The trial court did not err by concluding that defendant's previous contempt citations (for threatening a party and using vulgar language) indicated his behavior could impede the functioning of the court. The record is also replete with additional instances of defendant's disruptiveness that the trial court did not cite. At a hearing before the first trial, the trial court held defendant in contempt "[a]t least four times" for failing to take a seat. At a hearing on September 7, 2010, the trial court repeatedly stated to defendant that it had previously ruled on his motion regarding DNA "many times," but defendant continued to question the ruling even though the trial court warned it was out of time for the motion hearing. Even after the trial court ruled that defendant could not represent himself, he continued to speak on the record over the People's objections. In light of the trial court's conclusion that defendant's self-representation could unduly disrupt the trial, and because a court must "indulge every reasonable presumption against waiver" of the right to counsel, we conclude that it was not error to deny defendant's motion to represent himself at his second trial.

*Id.* (citation omitted).

As noted above, petitioner raised his second and third grounds for habeas relief – the trial court's failure over nine months to hold a hearing on his request to represent himself and appellate counsel's ineffective assistance for failing to raise this issue on direct appeal – in a motion for relief from judgment filed with the trial court.  Relying exclusively on its September 2011 *Faretta* hearing order, the court denied petitioner's claims as meritless and found appellate counsel had not been ineffective.  (ECF No. 8-28, PageID.3083-86).

### 3.  *The Sixth Amendment Right to Self-Representation*

"The Sixth Amendment guarantees a criminal defendant the right to counsel, as well as the corollary right to waive counsel and proceed *pro se* even when the court believes that it would not be advisable."  *Powell*, 847 F.3d at 774 (citing *Faretta*, 422 U.S. at 807, 819-20).  Forcing a defendant to accept an appointed attorney against his will violates his "constitutional right to conduct his own defense."  *Faretta*, 422 U.S. at 836.  "An unwanted counsel 'represents' the defendant only through a tenuous and unacceptable legal fiction.  Unless the accused has acquiesced in such representation, the defense presented is not the defense guaranteed him by the Constitution, for, in a very real sense, it is not his defense."  *Id.* at 821.

A "searching or formal inquiry" must follow a defendant's invocation of the right to conduct his or her own defense when it is made clearly, unequivocally, and in a timely fashion.  *Cassano v. Shoop*, 1 F.4th 458, 466 (6th Cir. 2021), *pet. for cert. docketed*, No. 21-679 (U.S. Nov. 8, 2021) (citing *Hill v. Curtin*, 792 F.3d 670, 677 (6th Cir. 2015)).  Courts must ascertain that the defendant's waiver was made "knowingly, intelligently, and voluntarily[,]" and must warn the defendant "specifically of the dangers and disadvantages of self-representation."  *Powell*, 847 F.3d at 774 (internal quotation marks and citations omitted).  "This *Faretta*-compliant hearing must be held without delay."  *Cassano*, 1 F.4th at 466-67.

13

However, "the right to self-representation is not absolute." *Martinez v. Ct. of Appeal of Cal., Fourth App. Dist*., 528 U.S. 152, 161 (2000). A trial court may "terminate self-representation or appoint 'standby counsel'—even over the defendant's objection—if necessary." *Id*. at 162. Further, "standby counsel may participate in the trial proceedings, even without the express consent of the defendant, as long as that participation does not seriously undermin[e] the appearance before the jury that the defendant is representing himself. *Id*. (internal quotation marks omitted). Courts may also balance the potential for delay and disruption against a defendant's right to self-representation, because "the government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer." *Id*. The *Faretta* Court itself noted that "[t]he right of self-representation is not a license to abuse the dignity of the courtroom." *Faretta*, 422 U.S. at 834 n.46.

The Supreme Court has explained that "[t]he right [to self-representation] is either respected or denied; its deprivation cannot be harmless." *McKaskle v. Wiggins*, 465 U.S. 168, 177 n.8 (1984). Errors that are not amenable to harmless error analysis are considered "structural defects." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 148 (2006). "Errors of this type are so intrinsically harmful as to require automatic reversal . . . without regard to their effect on the outcome." *Neder v. United States*, 527 U.S. 1, 7 (1999). The Court shall now address each of petitioner's self-representation claims in turn.

### 4.  *Analysis*

First, petitioner argues that the trial court's *Faretta* ruling "disregarded [his] showing of a willingness and ability to abide by rules of procedure and courtroom protocol" and therefore violated his right to self-representation. (ECF No. 10, PageID.3231). This claim for relief was adjudicated on the merits and is therefore subject to AEDPA deference. The trial court's

14

rationale for denying petitioner's request to conduct his own defense was based on constitutionally permissible considerations.  The Michigan Court of Appeals reasonably concluded that petitioner's prior disruptive conduct – for instance, his behavior during the first trial and his multiple contempt citations – justified the trial court's determination that the government's interests in the "integrity and efficiency" of the trial outweighed petitioner's interest in representing himself.  *Martinez*, 528 U.S. at 162.  Under AEDPA's highly deferential standard, the Court concludes that because the state court rulings were not unreasonable or contrary to clearly established federal law, petitioner is not entitled to relief on his first claim.

Second, petitioner contends that the trial court's nine-month delay in addressing his timely, unequivocal requests to proceed pro se eroded his right to self-representation.  As noted above, this claim was not adjudicated on the merits for AEDPA purposes and therefore must be reviewed de novo as it would be on direct appeal.  "[I]n situations where a defendant clearly, unequivocally, and timely invokes the right to self-representation," as occurred in the present case, the trial court must hold a "*Faretta*-compliant hearing . . . without delay."  *Cassano*, 1 F.4th at 466-67.  *See also Moore v. Haviland*, 531 F.3d 393, 403 (6th Cir. 2008) (stating that the defendant "had made not one but two clear requests to proceed pro se . . . [and] it was clearly contrary to *Faretta* for the court to have failed to address those requests promptly and fully").  Delay in addressing a defendant's unequivocal and timely request to proceed pro se can erode the right to self-representation in at least two ways:  (1) it may "forc[e] the accused to proceed with counsel in whom he has no confidence and whom he may distrust"; and (2) "[i]t encourages courts to leave a *Faretta* motion pending, in the hope that the request will eventually be construed as ambiguous," and therefore reasonably ignored or brushed aside.  *Raulerson v. Wainwright*, 469 U.S. 966, 970 (1984) (Marshall, J., dissenting from the denial of certiorari).

In the present case, the trial court "should have taken up the self-representation request more expeditiously." *United States v. Rice*, 776 F.3d 1021, 1025 (9th Cir. 2015) (regarding a trial court that delayed four months in ruling on a defendant's request to proceed pro se). However, the Court finds no Sixth Amendment violation in the record as a whole.  Due to petitioner's highly disruptive conduct during his first trial, the trial court reasonably concluded that the need to ensure the integrity and efficiency of the pretrial and trial proceedings outweighed petitioner's interest in acting as his own lawyer.  Although the trial court might have more closely complied with *Faretta* had it provided this explanation earlier in the case, petitioner was always going to be required to proceed with counsel, given his prior, disruptive behavior.

In *United States v. Jones*, 489 F.3d 243, 249 (6th Cir. 2007), the Sixth Circuit indicated that if a trial court fails to promptly address a defendant's request to proceed pro se and, during this period of delay, the defendant and his counsel "conflict[] on questions of strategy, for example, reversal may [be] warranted."[7]  Here, petitioner asserts that several disagreements with counsel between December 2010 and the trial court's *Faretta* hearing in September 2011 are indicative of the fact that the defense presented was not the defense he wanted or the defense he would have put forth had his requests to represent himself been granted.  Therefore, petitioner contends, his right to self-representation was eroded.  The only such disagreement cited by petitioner pertains to the timing of his second trial – specifically, the prosecutor's request to move the trial to an earlier date.  Although petitioner and defense counsel disagreed on the proper response to this motion, their disagreement was immaterial.  In denying the prosecutor's motion, the trial court stated that the trial could not be moved earlier due to the "unavailability of witnesses"

---

[7]  In contrast to the present case, the trial court in *Jones* entirely failed to conduct a *Faretta*-compliant hearing.  *See Jones*, 489 F.3d at 248.

and the judge's previously scheduled family vacation.  (ECF No. 8-11, PageID.765).  The motion was clearly going to be denied even if defense counsel had submitted a response concurring with the prosecutor's requested relief.   The conflict between counsel and petitioner was neither "resolved . . . in favor of counsel," nor was it "resolved . . . in favor of [petitioner]."  *Jones*, 489 F.3d at 249.  In short, although the trial court should not have deferred ruling on petitioner's self-representation request, nothing about the proceedings would have changed had the trial court conducted a *Faretta* hearing more promptly.

In this case, petitioner received precisely what the Sixth Amendment guarantees – a qualified right to self-representation, which may be revoked or denied if the defendant has abused the dignity of the courtroom.  Here, defendant abused the dignity of the courtroom during his first trial by acting in a hostile, aggressive, and disruptive manner, which resulted in two convictions of contempt of court.  Because there was no Sixth Amendment violation in this case, there was no structural error.  Petitioner is not entitled to relief on his second claim.

### B.  Ground Three:  Ineffective Assistance of Appellate Counsel

Finally, petitioner argues that his appellate counsel was ineffective for failing to raise on appeal the trial court's nine-month delay in addressing his requests to proceed pro se.  A habeas court's review of a lawyer's performance is generally "doubly deferential."  *Abby v. Howe*, 742 F.3d 221, 226 (6th Cir. 2014).  The first layer of deference is the deficient-performance-plus-prejudice standard of *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  The second layer, under AEDPA, asks "whether the state court was reasonable in its determination that counsel's performance was adequate."  *Abby*, 742 F.3d at 226.  To prevail on an ineffective assistance claim,

a habeas petitioner "must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Bell v. Cone*, 535 U.S. 685, 699 (2002).

However, AEDPA deference does not apply to this particular claim of ineffective assistance. As explained above, neither the trial court nor appellate counsel addressed the issue of petitioner's repeatedly ignored requests for self-representation. The trial court therefore never applied the *Strickland* test to appellate counsel's performance vis-à-vis that claim. Accordingly, petitioner's claim of ineffective of assistance must be reviewed de novo and is subject only to the deference required by *Strickland*.

Under *Strickland*, petitioner must show that (1) his appellate counsel's "performance was deficient" and (2) "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. Constitutionally deficient performance may be found if "counsel committed an error so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Jones v. Bell*, 801 F.3d 556, 562 (6th Cir. 2015) (quoting *Strickland*, 466 U.S. at 687, internal quotation marks omitted). A strong presumption of effectiveness applies, *Scott v. Mitchell*, 209 F.3d 854, 880 (6th Cir. 2000), and "it is not deficient performance [for an appellate attorney] to leave some colorable issue[s] out." *Jones*, 801 F.3d at 562 (quoting *Jones v. Barnes*, 463 U.S. 745, 753-54 (1983)). The Court must "consider a number of factors, including whether the omitted issues [were] significant and obvious and whether they were clearly stronger than those presented in the actual appeal." *Id.* (internal quotation marks omitted).

In *Jones*, 801 F.3d at 562, the Sixth Circuit addressed whether appellate counsel was ineffective for failing to raise on direct appeal a trial court's denial of a petitioner's request for self-representation on the eve of trial. Noting that "the Michigan courts may well have upheld

this denial as untimely and disruptive[,]" the Sixth Circuit nonetheless observed that "Jones had a much better chance to prevail on that claim than" the claims that appellate counsel had in fact raised on direct appeal.  *Id.*  Therefore, the Sixth Circuit "assume[d] that Jones [could] show deficient performance" on the part of appellate counsel.  *Id*. at 563.  Here, on at least two separate occasions, the trial court failed to address petitioner's timely and unequivocal requests to represent himself.  The Michigan courts may well have found that the trial court's delay in addressing petitioner's requests did not violate his Sixth Amendment right to self-representation, as this Court concluded on habeas review.  However, because the denial of the right to self-representation is a structural defect, his Sixth Amendment self-representation claim regarding the trial court's failure to conduct a *Faretta* hearing promptly was more likely to be successful on appeal than various claims raised by appellate counsel (e.g., challenges related to the use of the term "victim," the inclusion of "bad acts" evidence, and trial counsel's failure to challenge a juror for cause).  The Court shall therefore assume that petitioner can show constitutionally deficient performance.

"Even if [petitioner] is able to show deficient performance, he still must also show *Strickland* prejudice."  *Id*.  To demonstrate prejudice for an "allegation of ineffective assistance of appellate counsel, there must be a reasonable probability that the result of the appeal would have been different."  *Id.* (emphasis omitted).  In other words, petitioner must show that his *Faretta* claim would have succeeded on direct appeal.  Although this claim was stronger than many of the claims that were in fact raised by appellate counsel, the Court concludes that petitioner has failed to show any prejudice from appellate counsel's deficient performance.  As noted above, the trial court should have promptly addressed petitioner's requests for self-representation.  However, this is not a case where the trial court's delay eroded his rights under the Sixth Amendment.  Petitioner's disruptive conduct is well documented in the record and fully supported the trial

19

court's eventual denial of petitioner's self-representation request.  Had the trial court addressed petitioner's requests immediately, the pretrial period and trial would have proceeded exactly as they did; petitioner would have been represented by counsel so as to ensure the integrity and efficiency of the proceedings and to preserve the dignity of the courtroom.  Due to petitioner's prior conduct and the inconsequential impact of the trial court's delay in ruling on his requests for self-representation, there is no reasonable probability that this Sixth Amendment claim would have succeeded on direct appeal.  Petitioner is therefore not entitled to relief on his claim of ineffective assistance of appellate counsel.

## IV.    *Certificate of Appealability and Leave to Proceed in Forma Pauperis*

In order to appeal the Court's decision, petitioner must obtain a certificate of appealability.  *See* 28 U.S.C. § 2253(c)(2).

> To obtain a [certificate of appealability] under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that . . . includes showing that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.

*Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). The Court may grant or deny a certificate of appealability when it issues a ruling on a habeas petition.  *See Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002).

In the present case, due to the trial court's lengthy delay in addressing petitioner's timely and unequivocal requests to proceed pro se, jurists of reason could debate whether the petition should have been resolved in a different manner.  *See Cassano*, 1 F.4th at 466-67; *Moore*, 531 F.3d at 403.  Therefore, a certificate of appealability is granted as to petitioner's second and third claims for habeas relief.  The Court also grants petitioner leave to appeal in forma pauperis as to these two claims because such an appeal would not be frivolous.  *See* 28 U.S.C. § 1915(a)(3).

*V.*    *Conclusion*

For the reasons stated above,

IT IS ORDERED that petitioner's application for a writ of habeas corpus is denied.

IT IS FURTHER ORDERED that a certificate of appealability is granted as to claims two and three only.

IT IS FURTHER ORDERED that leave to proceed in forma pauperis on appeal is granted as to claims two and three only.

s/Bernard A. Friedman

Bernard A. Friedman

Senior United States District Judge

Dated: March 30, 2022

Detroit, Michigan

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first-class U.S. mail on March 30, 2022.

**James Platte, Jr.**  #285651                    s/Johnetta M. Curry-Williams

ALGER MAXIMUM CORRECTIONAL            Case Manager

FACILITY

N6141 INDUSTRIAL PARK DRIVE

MUNISING, MI 49862